**In re Christopher F. COREY, Debtor.**

**Melnor, Inc., Plaintiff–Appellee,**

v.

**Christopher F. Corey, Defendant–Appellant.**

**BAP No. KS–07–115.**
**Bankruptcy No. 07–20462.**
**Adversary No. 07–06118.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Oct. 6, 2008.

Jeffrey R. Siegel of The Siegel Law Firm, Kansas City, MO, for Defendant–Appellant.

Colin N. Gotham of Evans & Mullinix, P.A., Shawnee, KS, for Plaintiff–Appellee.

Before THURMAN, RASURE, and ROMERO [1], Bankruptcy Judges.

## OPINION

RASURE, Bankruptcy Judge.

## I. INTRODUCTION

Appellant Christopher F. Corey, the debtor and defendant below ("Corey"), appeals a judgment finding Appellee Melnor, Inc.'s ("Melnor") claim against him to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (the "Section 523(a)(2) Judgment").[2] The bankruptcy court granted summary judgment on Melnor's Section 523(a)(2)(A) claim because it concluded, as a matter of law, that a prior judgment Melnor had obtained against Corey in litigation before a federal district court in Virginia (the "Virginia Judgment") had already determined that the debt Melnor sought to except from discharge was procured by fraud, and therefore the issue of Corey's fraud was not subject to further

1. Honorable Michael E. Romero, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

2. Corey appeals the portion of the Section 523(a)(2) Judgment that excepts Melnor's debt from discharge. Neither party has appealed the denial of Melnor's Section 727(a)(4)(A) claim.

litigation in Melnor's adversary proceeding.

Corey argued below, and argues on appeal, that the Virginia Judgment should not have preclusive effect because it was a "default" judgment, and under federal preclusion law, issues determined in default judgments are not considered to have been "actually litigated," thus negating an element required for issue preclusion. However, the bankruptcy court found that the Virginia Judgment had been entered in default as a sanction for Corey's obstreperous litigation tactics, rather than for simply failing to appear or defend Melnor's claims. Accordingly, the bankruptcy court concluded that Corey had a full and fair opportunity to litigate the issue of fraud, that Corey's own conduct prevented the issue of fraud from being "actually litigated" to its conclusion, and accordingly, that the Virginia Judgment precluded Corey from contesting whether his debt to Melnor was procured by fraud.

The bankruptcy court's memorandum opinion is well reasoned and is supported by the uncontested material facts and by preclusion law established in the Tenth Circuit.[3] Accordingly, the Section 523(a)(2) Judgment is AFFIRMED.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit unless one of the parties elects to have the district court hear the appeal.[4] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[5] As the bankruptcy court granted summary judgment in favor of Melnor on its Section 523(a)(2) claim and granted summary judgment in favor of Corey on Melnor's Section 727 claim, thus disposing of all Melnor's claims against Corey, and no post-judgment motions are pending, the judgment of the bankruptcy court is final for purposes of review.

## III. ISSUE APPEALED

The issue on appeal is whether the bankruptcy court erred in concluding that the Virginia Judgment (a federal court judgment), which established Corey's liability for fraud (and the amount of damages), and which was entered by default after Corey failed to appear at a discovery hearing and at trial, should preclude Corey from defending on the merits Melnor's claim to except the debt represented by the Virginia Judgment from discharge under Section 523(a)(2).

## IV. STANDARD OF REVIEW

 A bankruptcy court's grant of summary judgment based on a finding that the elements of issue preclusion (sometimes referred to herein as collateral estoppel) were satisfied is reviewed *de novo*, and the Court must use the same standard, Rule 56 of the Federal Rules of Civil

---

**3.** *See McCart v. Jordana (In re Jordana)*, 232 B.R. 469 (10th Cir. BAP 1999), *aff'd*, No. 99–6194, 2000 WL 783401 (10th Cir. June 20, 2000).

**4.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

**5.** *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

Procedure, that the bankruptcy court was required to apply. *See Gonzales v. Hernandez,* 175 F.3d 1202, 1204 (10th Cir. 1999). Accordingly, this Court must review the record presented to the bankruptcy court on summary judgment in the light most favorable to, and draw inferences from the record in favor of, the party that did not move for summary judgment, which in this case is Corey. *See id.; Fischer v. Forestwood Co.,* 525 F.3d 972, 978 (10th Cir.2008). No deference to the bankruptcy court's determination is permitted in a *de novo* review. *See Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).[6]

▮▮▮ If, on its *de novo* review, this Court finds that the elements of issue preclusion were established by the evidentiary record on summary judgment, it must then review the bankruptcy court's decision to invoke the doctrine to preclude Corey from defending Melnor's fraud claim for an abuse of discretion. *See Arapahoe County Pub. Airport Auth. v. FAA,* 242 F.3d 1213, 1220 (10th Cir.2001) (trial court has discretion over whether to apply issue preclusion in any particular case). Under the abuse of discretion standard, the bankruptcy court's decision to apply collateral estoppel should be affirmed "unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (internal quotations and citation omitted). "An abuse of discretion occurs when the [lower] court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Id.* at 1504–05 (quotations and citation omitted).

## V. UNCONTESTED MATERIAL FACTS BEFORE THE BANKRUPTCY COURT[7]

The record on summary judgment establishes that although Corey resided in either Kansas or Colorado during the pendency of the Virginia litigation, Corey materially participated in the Virginia proceedings by filing pleadings, conducting discovery, and requesting hearings. Some aspects of Corey's participation in the Virginia litigation can be gleaned from the pleadings attached to the summary judgment briefs. These pleadings reveal the following chronology of events: [8]

On December 17, 2004, Melnor filed a Complaint in the United States District Court for the Western District of Virginia (the "Virginia District Court"), asserting

---

**6.** In considering the summary judgment pleadings *de novo,* it appears that the documents attached to parties' motions and briefs were not authenticated by an affidavit or otherwise, and therefore do not comply with Rule 56(e) of the Federal Rules of Civil Procedure (applicable to the adversary proceeding by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). *See Harris v. Beneficial Okla., Inc. (In re Harris),* 209 B.R. 990, 993–94 (10th Cir. BAP 1997) ("[I]f a party wishes to have its documents considered by the court, they must be admissible as evidence. In order to be admissible as evidence, a supporting affidavit must accompany the documents" (quotations and citation omitted). However), neither party objected below to the authenticity of the documents attached to the parties' motions and briefs, and therefore any evidentiary objections to consideration of the documents have been waived.

**7.** In their briefs, the parties' disagreements concerning any of the following material facts were based on the opposing party's characterization or interpretation of documents attached to the briefs, but were not based on conflicting evidence. Certain facts were legitimately controverted, but those facts were not relevant to Melnor's Section 523(a)(2) claim.

**8.** The docket sheet for the Virginia litigation was not part of the appellate record.

claims against Corey (and SKR Resources, Inc. ("SKR"), a company of which Corey was president) for fraud, unjust enrichment, and constructive fraud. *See* Complaint, attached to Melnor's Motion for Summary Judgment, *in* Appendix ("App.") at 78.[9] On March 28, 2005, a default judgment was entered against Corey for failure to respond to the Complaint. *See* Motion to Set Aside Default at 2, *in* App. at 185. On April 6, 2005, Corey's counsel filed a Motion to Set Aside Default, citing defective service of process on Corey as cause. *Id.* at 184–87. Although not contained in the record, the Motion to Set Aside Default must have been granted, because litigation against Corey continued.

Melnor propounded discovery requests on Corey and filed a motion to compel discovery. On August 18, 2005, Corey's counsel filed a motion to dismiss for lack of jurisdiction (the "Motion to Dismiss"), contending that Corey did not have sufficient ties to the state of Virginia for the Virginia District Court to assume jurisdiction over his person. App. at 84–92. On August 31, 2005, Corey's counsel filed an opposition to Melnor's motion to compel, asserting that Melnor's discovery requests were premature because Corey's Motion to Dismiss was pending. App. at 196–207.

On September 15, 2005, Corey, as president of co-defendant SKR, advised Stephanie Lewis, who was then counsel for both SKR and Corey, by letter that SKR had "elected to terminate your service" in the Virginia litigation. App. at 209. Several months later, on November 20, 2005, Ms. Lewis filed a motion to withdraw as counsel for Corey, representing that she had not been authorized to represent Corey individually in the litigation except to challenge the district court's jurisdiction, which challenge failed when the Motion to Dismiss was denied on November 11, 2005. App. at 155–58. The district court entered an order granting the motion to withdraw. App. at 159. On November 21, 2005, default judgment was entered against SKR.[10] From that point forward, Corey represented himself.

On December 12, 2005, Corey filed a detailed Answer to the Complaint. App. at 94–96. Thereafter, the parties engaged in additional discovery. At some point, Corey filed answers to Melnor's requests for production of documents in which Corey objected to the majority of Melnor's requests on trade secrets grounds. App. at 233–34. On December 27, 2005, Corey issued to Melnor his requests for production of documents. App. at 236–38. On or about January 3, 2005, Corey responded to Melnor's interrogatories. App. at 239–42. On January 31, 2006, Melnor's counsel took Corey's deposition. App. at 180. Apparently, Melnor objected to Corey's discovery requests, and on February 11, 2006, Corey filed a Motion to Compel Production of Documents from Plaintiff Melnor, Inc. ("Corey's Motion to Compel"). App. at 243–47.

On February 17, 2006, Corey filed a witness list naming ten witnesses and setting forth the anticipated substance of their testimony. App. at 248. On March 28, 2006, a hearing was held on Corey's Motion to Compel, at which Corey failed to appear. The magistrate judge before whom the hearing was to be held recommended that the district court strike Corey's defenses as a sanction. App. at 98. On April 7, 2006, Corey filed a motion for

9. All documents referred to herein were attached as exhibits to the summary judgment briefs below and are properly in the record on summary judgment.

10. A final judgment against SKR, which included attorney fees, was not entered until April 5, 2006. App. at 213. That judgment is not relevant to this appeal.

reconsideration, contending that he did not receive notice of the hearing held on March 28, 2006. App. at 250–51.

On May 4, 2006, the district court judge, treating Corey's motion for reconsideration as an objection to the magistrate's report and recommendation, overruled the objection, and adopted the magistrate judge's report and its recommendation to strike Corey's defenses as a sanction for failing to appear at the hearing on Corey's Motion to Compel. App. at 98–99. The district court noted, however, that "this sanction is not simply a response to Corey's failure to appear at a single hearing but rather, is the culmination of a course of obstructive behavior on the part of defendants which has effectively prevented the court from proceeding to the merits of the underlying dispute." *Id.* at 98. Further, the court found that—

> the record reflects a pattern of behavior on the part of the defendants seemingly aimed at preventing the court from ever reaching the merits of that claim.... Corey has obstructed the course of discovery by preventing the court from setting and completing essential hearings and by attempting to excuse his behavior by incredibly asserting that he has not received the court's notices. The court finds that striking Corey's defenses and moving forward to the issue of damages is the only way the court can advance this case toward its ultimate resolution. The court is satisfied that any lesser sanction would only enable further delays by Corey.

*Id.* at 98–99. Corey filed a Request for Jury Trial. App. at 235.

On May 23, 2006, pursuant to the order in which the district court found that "moving forward to the issue of damages is the only way the court can advance this case toward its ultimate resolution," the district court assembled a jury (as request-ed by Corey) for trial on Melnor's damages. Memorandum Opinion of the Virginia District Court at 1, *in* App. at 103. Without notice to Melnor or the district court, Corey failed to appear for trial. *Id.* However, Melnor was present at trial through its counsel and its president. *Id.* The court excused the jury and declared Corey to be in default. *Id.* Melnor presented testimony of its witness and documentary evidence of its damages. *Id.* at 103–04.

On May 24, 2006, the district court issued its Memorandum Opinion summarizing the course of proceedings, in relevant part, as follows:

> [B]y order entered May 4, 2006, the court struck Corey's defenses as a sanction for his course of obstructive behavior. The court was set to proceed to trial on the sole issue of damages on May 23, 2006, and per Corey's request, the court assembled a jury. However, Corey did not appear, the court declared Corey to be in default. The court excused the jury and heard testimony [regarding damages].

*Id.* The district court concluded that "by virtue of Corey's default, Melnor has succeeded in their [sic] fraud action." *Id.* at 104. The district court further awarded attorney fees to Melnor on the ground that under Virginia law, "reasonable attorney fees [may be awarded] to a successful plaintiff in a fraud action." *Id.* The district court entered a Judgment Order against Corey in the amount of $428,624.07, plus pre-judgment interest from March 14, 2004, and attorney fees in the amount of $94,357.84 (the "Virginia Judgment"). App. at 110.

On March 8, 2007, Corey filed for relief under Chapter 7 of the Bankruptcy Code. On May 23, 2007, Melnor filed its Complaint Objecting to Discharge or to Determine Dischargeability of Debt, to which it

attached as conclusive proof that the debt was procured by fraud: (1) the Complaint filed in the Virginia litigation; (2) the Virginia Judgment; and (3) the Memorandum Opinion dated May 24, 2006. App. at 19–36.

## VI. CONTENTIONS OF THE PARTIES

Corey contends that the bankruptcy court erred in according offensive preclusive effect to the Virginia Judgment, thereby preventing Corey from defending on the merits whether the debt arose from fraudulent conduct. Corey argues that federal courts do not accord preclusive effect to issues resolved in default judgments because such issues were not "actually litigated" prior to the entry of judgment. Because the Virginia District Court entered judgment after finding Corey "in default" for failing to appear at a jury trial, Corey contends that the Virginia Judgment is simply a default judgment for failure to defend, and that such a judgment has no preclusive effect.

Melnor contends that Corey had the opportunity to, and did, "actually litigate" the issue of fraud, but chose not to appear at trial to litigate the matter to its conclusion. Melnor argues that the Virginia Judgment was entered as a sanction for frustrating the progress of the litigation, and that issues resolved by judgments entered as sanctions may be given preclusive effect.

## VII. DISCUSSION

■ A prior judgment on a fraud claim may preclude relitigation of the issue of fraud in a proceeding seeking to except the judgment from discharge under Section 523(a)(2). *See Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Federal courts apply federal law in determining the preclusive effect of a judgment entered by a federal court. *See McCart v. Jordana (In re Jordana),* 232 B.R. 469, 475 (10th Cir. BAP 1999), *aff'd,* No. 99–6194, 2000 WL 783401 (10th Cir. June 20, 2000). A federal judgment may establish (or, in other words, preclude relitigation of) an issue in a later proceeding if—

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* at 475–76 (*quoting Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 978 (10th Cir.1995)). In this case, the scope and interpretation of the second and fourth elements of this doctrine are at issue.

■ Corey is correct in arguing that, in general, default judgments entered by federal courts are not given collateral estoppel effect (although they are given *res judicata,* or claim preclusive, effect) because issues of fact and law were not "actually litigated" to a final adjudication on the merits. In *Arizona v. California,* 530 U.S. 392, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000), the United States Supreme Court, in distinguishing claim preclusion from issue preclusion, recognized that a *consent judgment* precluded further litigation on the particular claim that was resolved by the consent judgment, but did not preclude later relitigation of issues of fact or law that supported the claim. *Id.* at 414, 120 S.Ct. 2304. About issue preclusion, the Supreme Court stated—

It is the general rule that issue preclusion attaches only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the

judgment." Restatement (Second) of Judgments § 27, p. 250 (1982). "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action." *Id.*, comment *e*, at 257.

*Id.* Thus, unless circumstances justifying an exception from the requirement are present, federal law does in fact require an issue to have been "actually litigated"—that is, the issue must have been finally determined by a tribunal after all evidence and argument concerning the issue was fully presented by both parties—before issue preclusion attaches.

Corey argues that because the Virginia District Court declared Corey to be "in default" when he failed to appear at trial, the Virginia Judgment is a "default judgment" in which the issue of fraud was not "actually litigated" by either party, and therefore none of the issues resolved by the Virginia Judgment are conclusive in Melnor's Section 523(a)(2) proceeding. Corey argues that the Tenth Circuit and other circuit courts, as well as the bankruptcy court in this case, erroneously substitute the "full and fair opportunity to litigate" element for the "actually litigated" requirement. Appellant's Brief at 10.[11]

This Court agrees with Corey that federal law, as stated by the United States Supreme Court, generally includes the re-quirement that an issue must have been "actually litigated" to its conclusion in the first case in order to be preclusive in subsequent litigation. However, the "full and fair opportunity to litigate" requirement is not applied in lieu of the "actually litigated" element in the Tenth Circuit, as Corey suggests, but is in fact a separate requirement. Inclusion of "full and fair opportunity to litigate" as an element of issue preclusion is the settled law of the Tenth Circuit,[12] and is not inconsistent with the requirement that the issue resolved be "actually litigated." The requirement that a litigant had a "full and fair opportunity to litigate" an issue in an earlier proceeding is in fact an additional safeguard against unfairly precluding relitigation where the opposing party "conceal[ed] other information that would materially affect the outcome of the case," the party against whom preclusion was sought was "laboring under a mental or physical disability that impeded effective litigation," or "the amount in controversy in the first action [was] so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." *Restatement (Second) of Judgments* § 28(5) and cmt. j.

The Tenth Circuit, and several other circuits, however, recognize an *exception* to the "actually litigated" requirement when the party sought to be precluded actually participated in the prior litigation *and* had a full and fair opportunity to litigate, but the issue was resolved by default as a sanction on account of that

---

**11.** Corey relies on an opinion of a district court in the Eastern District of Virginia to challenge the propriety of recognizing "full and fair opportunity to litigate" as an element of issue preclusion. Appellant's Brief at 11–12 (citing *Fed. Ins. Co. v. Gilson (In re Gilson)*, 250 B.R. 226 (Bankr.E.D.Va.2000)). The reasoning in the *Gilson* case is not binding on this Court, and is contrary to this Court's *Jordana* opinion, which was affirmed

by the Tenth Circuit, and therefore is not even persuasive.

**12.** *See, e.g., B–S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006); *In re True*, 390 F.3d 1210, 1232 (10th Cir.2004); *Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation*, 975 F.2d 683, 687 (10th Cir.1992).

party's obstructive behavior. Because the party's own sanctionable conduct prevented the issue from being "actually litigated" to judgment, these circuit courts find it inequitable to reward that conduct by giving the errant party a second opportunity to litigate the same issue in a different forum.

In an unpublished order, the Tenth Circuit affirmed and essentially adopted the Bankruptcy Appellate Panel's opinion in the *Jordana* case. *See McCart v. Jordana (In re Jordana)*, No. 99–6194, 2000 WL 783401 (10th Cir. June 20, 2000). Therein, the Tenth Circuit stated—

The bankruptcy court recognized the general rule that a default judgment will not be granted preclusive effect because none of the issues was actually litigated. [Citation omitted]. However, as both the bankruptcy court and the BAP recognized, there is an exception where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment. *See Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216–17 (3d Cir.1997) (affirming the use of collateral estoppel in bankruptcy discharge proceeding where default entered because debtor willfully obstructed discovery); *Bush v. Balfour Beatty [Bahamas], Ltd. (In re Bush)*, 62 F.3d 1319, 1323–24 (11th Cir.1995) (same; debtor engaged in dilatory and deliberately obstructive conduct); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368–69 (9th Cir. 1995) (same; debtor deliberately precluded resolution of factual issues by obstructing discovery process). In these circumstances, the "actual litigation" re-quirement of collateral estoppel may be satisfied because the party was afforded a reasonable opportunity to defend himself on the merits but [chose] not to do so. *See Bush*, 62 F.3d at 1324.

*Id.* at * 1.

■ The record on summary judgment below supports the bankruptcy court's conclusion that Corey had a full and fair opportunity to defend himself in the Virginia litigation, and that he did participate in the litigation, as set forth in the chronology of undisputed events set forth above, for over a year. Early in the litigation, Corey, through counsel, successfully obtained the vacation of a default judgment entered under Rule 55 for failure to respond to the complaint. Corey, through counsel, unsuccessfully challenged the Virginia court's jurisdiction over his person. After losing his bid to dismiss the case, Corey dismissed his counsel and chose to proceed *pro se*. Acting *pro se*, Corey answered the Complaint, propounded discovery, responded to discovery, filed a motion to compel discovery, filed a motion to reconsider, and requested that his trial be held before a jury.

Corey argues that the district court did not declare him in "default" as a sanction, but simply because he failed to appear at the jury trial. Although in the May 4, 2006 order, the district court stated that it struck Corey's "defenses" as a sanction, and did not explicitly strike his entire answer (which, in addition to affirmative defenses, included denials of Melnor's allegations), it is clear from the context of the order that the district court intended that the sanction would conclusively establish Corey's liability on the Complaint.[13] The

---

13. Melnor argues, persuasively, that in "striking Corey's defenses," the district court explicitly struck all manner of defenses, including denials of Melnor's allegations as well as affirmative defenses. Appellee's Brief at 17. This interpretation is supported by Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8(b) is captioned "Defenses: Ad-

district court explicitly found that "Corey has obstructed the course of discovery by preventing the court from setting and completing essential hearings and by attempting to excuse his behavior by incredibly asserting that he has not received the court's notices. The court finds that striking Corey's defenses and *moving forward to the issue of damages* is the only way the court can advance this case toward its ultimate resolution. The court is satisfied that any lesser sanction would only enable further delays by Corey." App. at 99 (emphasis added). It is impossible to interpret the district court's order as anything less than a declaration of Corey's liability on the Complaint as a sanction for obstructing the course of discovery.

When Corey failed to appear at his jury trial on damages without notice, the district court declared Corey to be in default. Declaring a litigant in default due to an unexcused non-appearance at trial at which a jury has been assembled is not equivalent to a Rule 55 default for failure to answer and defend, as Corey contends. The district court justifiably entered default in light of the inconvenience and unnecessary expense appearing for an uncontested trial caused Melnor, its counsel, its witnesses, the court and the jury. In this case, entering default at the trial on damages was a further sanction for obstructing the progress of the proceedings.

Corey contends that even though the district court concluded that his conduct was consistently obstructive, the district court never "inquired into Mr. Corey's intent, or the reasons for his litigation problems," which would have elicited from Corey that for financial reasons, he was unable to hire counsel and travel to Virginia to attend hearings. Appellant's Brief at 14. If Corey believed that the Virginia District Court erroneously concluded that his litigation strategy was sanctionable, he should have sought relief under Rule 59 or 60 of the Federal Rules of Civil Procedure, or appealed the Virginia Judgment. He may not collaterally attack the sanction as unjustified or against the weight of the evidence in the Section 523(a)(2) proceeding.

Corey also argues that the *bankruptcy court* should have taken into consideration his dire financial straits and the fact that he was forced to defend himself *pro se,* from which the court could have concluded that issue preclusion was inequitable in this case. Appellant's Brief at 17. Because these circumstances effectively relieved Melnor from the obligation to produce evidence of fraud to the court or jury in the Virginia litigation, Corey contends that the bankruptcy court should have required the elements of Melnor's fraud claim be established in the Section 523(a)(2) proceeding. Accordingly, Corey asserts that the bankruptcy court abused its discretion in applying issue preclusion in this case.

In balancing the equities, however, even if Corey was financially ill-equipped and lacked the legal sophistication to properly defend himself in the Virginia litigation, Corey did cause Melnor to incur almost $95,000 in fees and expenses in order to actively litigate its claim in the Virginia litigation before Corey gave up his defense. It would be manifestly unfair to Melnor to require it to litigate its fraud claim anew, simply because Corey decided that he was not satisfied with the course of the Virginia litigation and opted out at the

missions and Denials" and Rule 8(c) is titled "Affirmative Defenses." Rule 10(b) provides that "each defense other than a denial" must be set out in a separate count or defense. Thus, under the Federal Rules, the term "defenses" includes both denials and affirmative defenses.

last moment, leading the district court to enter a judgment in his absence.[14] The bankruptcy court's decision to bar Corey from causing Melnor to expend even more time and resources pursuing a claim that had already been actively litigated and reduced to judgment once was not outside the realm of permissible outcomes or a clear error of judgment, nor was it arbitrary or capricious.

In summary, even taking the evidence proffered on summary judgment in the light most charitable to Corey, it is undisputed that the Virginia District Court found Corey's litigation tactics, including his failure to appear at trial, seriously obstructive, resulting in the entry of the Virginia Judgment adverse to Corey. The record establishes that Corey had a full and fair opportunity to defend himself against Melnor's claims, and did so for over a year, but unilaterally chose to cease litigating without notice to the court or Melnor.[15] The district court found that Corey engaged in "a course of obstructive behavior ... which ... effectively prevented the court from proceeding to the merits of the underlying dispute," declared Corey's liability on the Complaint as a sanction, and moved on to hearing evidence of damages. The district court further awarded Melnor almost $95,000 in fees, concluding that such an amount was reasonable "in light of the complexity and duration of the case and the unnecessarily protracted course of litigation Corey's ac-

tions have yielded." Memorandum Opinion at 3, App. at 105. The district court concluded that "by virtue of Corey's default, Melnor has succeeded in their [sic] fraud action" and fees were awarded pursuant to Virginia law permitting fee shifting to a successful plaintiff in a fraud action. *Id.* at 104.

The bankruptcy court did not err in concluding that the issues of fraud and damages were conclusively established by the Virginia Judgment, and did not abuse its discretion in concluding that, notwithstanding that the Virginia litigation was not actively defended by Corey to its conclusion, the exception to "actually litigated" element of collateral estoppel, recognized in the *Jordana, Docteroff, Bush,* and *Daily* cases, was applicable, and, accordingly, that the Virginia Judgment precluded relitigation of the issues of fraud and damages in the Section 523(a)(2) proceeding.

## VIII. CONCLUSION

The Judgment Granting Complaint Pursuant to § 523(a)(2)(A) to Except Melnor's Claim From Discharge and Denying Complaint Objecting to Discharge Pursuant to § 727(a)(4)(A) is AFFIRMED.

---

14. Corey asserts that since Melnor never had to put on its proof in the Virginia litigation, it would not be "prejudiced by having to prove fraud for the *first* time" in the Section 523(a)(2) proceeding. Appellant's Brief at 17 (emphasis in original). Events underlying Melnor's fraud claim occurred in 2003, however, and the Virginia District Court found that Corey had not fully cooperated in discovery in the Virginia litigation, and therefore discovery had not been completed. The record does not reflect an absence of prejudice to

Melnor if Melnor were required to reinstate the fraud litigation at this late date.

15. If Corey and Melnor had entered into a consent judgment, for instance, or a settlement, there would not have been a binding finding of fraud unless the parties agreed that preclusion was intended. *See United States v. Botefuhr,* 309 F.3d 1263, 1282 (10th Cir.2002) (citing *Restatement (Second) of Judgment* § 27, cmt. e).