NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2607
_____

HELENE O'DONNELL,
                              Appellant

v.

PASSPORT HEALTH COMMUNICATIONS, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cv-03231)
District Judge:  Hon. Petrese B. Tucker
_____

Submitted Under Third Circuit LAR 34.1(a)
March 28, 2014
_____

Before: FUENTES and SHWARTZ, <u>Circuit Judges</u>, and ROSENTHAL, <u>District Judge</u>.[*]

(Filed: March 28, 2014)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

    Plaintiff Helene O'Donnell brought suit against her former employer, Passport

Health Communications, Inc. ("Passport"), alleging, among other things, violations of the

_____

    [*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern
District of Texas, sitting by designation.

1

Family Medical Leave Act ("FMLA"). She contends that while she was on leave, Passport contacted her about signing certain employment documents and required her to return them during the period of her medical leave in order to secure a new position she was offered before her leave commenced. She failed to return the documents, and was terminated. The District Court granted summary judgment in favor of Passport on the FMLA claim. O'Donnell appeals this ruling. We will affirm.

## I. Factual & Procedural History

O'Donnell was employed as a sales executive at Passport, reporting to its Pennsylvania location from 2006 until her termination on January 28, 2011. In August and September 2010, Passport began a reorganization, which included the consolidation of the sales force and elimination of O'Donnell's Pennsylvania sales team. O'Donnell's supervisor, Charles Penrose, discussed these changes with her in August 2010, and in October 2010, he informed her that her position would be eliminated and recommended that she apply for a position in Passport's National Sales Force based in Tennessee.

On January 6, 2011, O'Donnell met with Vera Payne, a Passport Human Resources employee, who offered O'Donnell a position as a Regional Vice President in Tennessee and told O'Donnell that her position in Pennsylvania was being eliminated, effective immediately. Payne also told her that, in order to assume the new position, O'Donnell was required to sign a non-compete agreement. O'Donnell sought, and received, time for her attorney to review the non-compete agreement.[1] On January 8,

_____

[1] O'Donnell had previously received the non-compete agreement when it was circulated to every employee at Passport.

2

2011, Payne sent an email to O'Donnell transmitting an offer letter, job description, and non-compete agreement, and asked O'Donnell to return the signed forms by January 10. O'Donnell testified that she understood that signing the non-compete agreement was a requirement for taking the new job. O'Donnell called Payne on January 10 and told Payne she would not sign the agreement because she was continuing to seek the help of her attorney and was negotiating for a higher salary with her new boss, Scott Bagwell.[2]

On January 19, 2011, O'Donnell sought treatment for anxiety and panic attacks, and her doctor advised her to take leave from work until January 31. At 9:40 p.m. that evening, O'Donnell forwarded to Payne a copy of her doctor's orders, thereby informing Passport that she would be taking medical leave until January 31, 2011.[3] On January 21, 2011, O'Donnell and Bagwell communicated by e-mail about the new position and O'Donnell's salary, which Bagwell agreed to raise from $70,000 to $75,000. That same day, O'Donnell forwarded to Bagwell the doctor's orders concerning her medical leave, and Bagwell responded, "as we discussed we will work through HR, given your doctor's orders." App. 295.

Later on January 21, 2011, Payne sent O'Donnell an email in which she repeated that O'Donnell's prior position had been terminated and offered her two options: sign the non-compete agreement and accept the new position at the increased salary offered by Bagwell or receive a severance payment for the termination of the prior position. The

---

[2] In an affidavit O'Donnell filed in opposing summary judgment, she also claims that she proposed changes to the non-compete agreement to Payne and submitted a memo concerning her raise to Bagwell on January 11, but did not receive a response to either before taking medical leave.

[3] The leave was later extended to February 2, 2011.

email said that the deadline to accept or reject the offer was January 28, 2011, and that if O'Donnell did not respond by that date, Passport would "assume you are rejecting the offer and effectively making [January 28] your last day of employment." App. 240. On January 27, 2011, Payne again emailed to remind O'Donnell of the January 28 deadline and wrote that "[i]f we do not hear from you, we will assume that you have elected to terminate your employment with Passport." App. 213.

On January 28, 2011, O'Donnell responded to Payne's email, writing, "I assure you that I am not voluntarily resigning my employment and that I am fully involved in beginning work as the Regional VP, Sales." App. 239. O'Donnell's response did not reference the non-compete agreement. Payne responded by e-mail that she was "glad to hear [O'Donnell was] interested in accepting" the new position, but that O'Donnell still needed to formally indicate her acceptance by signing the offer letter and the non-compete agreement by the end of the day. App. 238. Forty-five minutes later, at 5:30 p.m., Payne again e-mailed O'Donnell, reiterating that "the offer of employment is revoked should we not receive the documentation (signed offer letter and non-compete) from you by end of business today." App. 238. O'Donnell never returned the non-compete or the offer letter, and was formally terminated effective January 28, 2011.[4]

O'Donnell filed this suit on May 18, 2011, alleging that Passport violated, among other things, the FMLA by interfering with her leave and retaliating against her for taking

---

[4] Passport formally informed O'Donnell of the termination in a letter dated February 1, 2011.

4

leave.[5] Following discovery, the parties filed motions for summary judgment. The District Court granted summary judgment in favor of Passport on O'Donnell's FMLA claim and denied O'Donnell's motion for partial summary judgment.[6] This appeal followed.[7]

---

[5] O'Donnell also alleged that Passport violated the Pennsylvania Wage Payment & Collection Law ("WPCL"), 43 Pa. Cons. Stat. §§ 260.1-260.45, by failing to pay compensation due to her, and asserted claims for unjust enrichment and intentional infliction of emotional distress. The District Court granted summary judgment in Passport's favor on the two state common law claims, but denied Passport's motion as to the WPCL claim. On May 8, 2013, the District Court issued an order declining to exercise supplemental jurisdiction over the WPCL claim. These rulings have not been appealed.

[6] O'Donnell also filed a motion for reconsideration, which the District Court denied.

[7] Passport contends that O'Donnell's appeal is untimely. Fed. R. App. P. 4(a)(1)(A) requires a notice of appeal to be filed with the district clerk within thirty days after entry of the judgment or order appealed from. If a notice of appeal is untimely, we must dismiss the case for lack of appellate jurisdiction because "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." Bowles v. Russell, 551 U.S. 205, 214 (2007). The time limitation in Rule 4 does not begin to run until the district court issues a "final" order. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 183 (3d Cir. 2010). Generally, "an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." Carter v. City of Phila., 181 F.3d 339, 343 (3d Cir. 1999). Because the District Court's summary judgment order of April 10, 2013 did not terminate O'Donnell's state WPCL claim, it was not a final order for purposes of § 1291. The District Court's May 8 order, in which it declined to exercise supplemental jurisdiction over the WPCL claim, resolved all of her claims and hence was a final order. O'Donnell filed her appeal of the summary judgment order on June 6, 2013. Thus, her appeal of the summary judgment order was timely.

## II. Discussion[8]

The FMLA and its accompanying regulations "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). To this end, "[the FMLA] creates a series of prescriptive substantive rights for eligible employees, often referred to as the 'entitlement' or 'interference' provisions which set floors for employer conduct." Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005). Relevant to this case, § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA's implementing regulations also make it unlawful for

---

[8] The District Court exercised federal question jurisdiction over O'Donnell's federal claim pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a District Court's order granting summary judgment. Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 369 (3d Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, we must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Macfarlan v. Ivy Hill SNF, L.L.C., 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is "genuine" only "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49. "In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party." Jacobs Constructors, Inc., 264 F.3d at 369 (citing Anderson, 477 U.S. at 248).

an employer to retaliate against an employee for invoking their FMLA rights.[9]

Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012).

O'Donnell contends that Passport: (1) interfered with her rights under the FMLA by failing to permit her to take a qualified leave of absence in accordance with the provisions of the FMLA; and (2) retaliated against her for taking FMLA leave when it terminated her employment. We will first address her interference claim.

### A. Interference

To prevail on an interference claim, an employee need only show that she was entitled to benefits under the FMLA and that her employer denied them.[10] Callison, 430 F.3d at 119. "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under [the] FMLA." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004) (internal quotation marks omitted). Though employees are also entitled to be reinstated to their former position or an equivalent when they return from leave, "if an employee is discharged during or at the end of a protected leave for a reason

---

[9] The regulation prohibiting retaliation provides, in pertinent part, "[t]he Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). A violation of the regulation can give rise to a "retaliation" claim. Callison, 430 F.3d at 119.

[10] A plaintiff need not show discriminatory intent to prevail on an interference claim. Lichtenstein, 691 F.3d at 312; see also Callison, 430 F.3d at 120 ("An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.").

unrelated to the leave, there is no right to reinstatement." Id. at 141 (citing 29 C.F.R. § 825.216(a)(1)).

Passport does not dispute that O'Donnell was entitled to benefits under the FMLA because she was an eligible employee and she provided adequate notice to Passport of a serious health condition and her intent to take leave. Thus, we need only decide whether Passport interfered with O'Donnell's leave by requiring her to perform work-related tasks during her leave—specifically, by requiring her to sign the offer letter and non-compete agreement and by negotiating with her concerning her salary.

Passport imposed the requirement that O'Donnell sign the offer letter and the non-compete agreement before she took FMLA leave. She was informed of the requirement that she sign the forms on January 6, 2011, and that she was to have done so by January 10, 2011. O'Donnell did not begin her leave, however, until January 20. Thus, O'Donnell knew that she needed to sign the forms well before she invoked her FMLA rights,[11] and there is no evidence that Passport's requirement that she sign the forms or the consequence for failing to do so arose because she took leave.

_____

[11] O'Donnell's post-deposition assertion that she did not know she faced termination before she took FMLA leave does not change the result. O'Donnell testified at her deposition that she was aware that her previous position had been terminated and that the non-compete agreement "was a required document for the new position." App. 116. In her affidavit, she repeated that she understood when she received the non-compete that her previous position had been terminated, but stated that she did not know that she faced termination until she took her FMLA leave. O'Donnell cannot rely on the portions of her affidavit that contradict her prior sworn testimony to manufacture disputed issues of material fact. See Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists."). She proffers no explanation for her

8

Furthermore, Passport's contacts with O'Donnell while she was on leave were limited to the status of her decision, the documents, and her salary request, as well as acknowledging she was on medical leave. Bagwell communicated with O'Donnell concerning only her FMLA leave and negotiating her salary. O'Donnell had initiated those salary negotiations before she requested or commenced her leave. Payne's contacts with O'Donnell after January 20 were merely to remind O'Donnell that her previous position had been eliminated and that, if she wanted to accept the new position, she remained under an obligation to do so formally by signing the required forms and returning them to Passport.

These de minimis contacts did not require O'Donnell to perform work to benefit the company and did not materially interfere with her leave. As this Court has previously explained, "there is no right in the FMLA to be 'left alone,'" and be completely absolved of responding to the employer's discrete inquiries. Callison, 430 F.3d at 121 (requiring employees on FMLA leave to notify the employer when leaving home and upon return does not interfere with FMLA); see also Reilly v. Revlon, Inc., 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009) (occasional phone calls inquiring about files do not qualify as "interference" with FMLA leave); Kesler v. Barris, Sott, Denn & Driker, PLLC, 482 F. Supp. 2d 886, 910-11 (E.D. Mich. 2007) (same). Here, the contacts were aimed only at

changed position on this issue, and her affidavit otherwise reiterates the key facts on which the District Court's decision relied: she knew her old position had been eliminated on January 6, and that to assume a new position required her to sign a non-compete. See also App. 115-16 (O'Donnell's deposition testimony that she knew she was required to sign the non-compete to assume the new position). Thus, the record supports the District Court's conclusion that O'Donnell was aware of the consequences of failing to sign the agreement before she took FMLA leave.

retaining O'Donnell as an employee, and there is no evidence showing that Passport in any way hampered or discouraged O'Donnell's exercise of her right to medical leave, or attempted to persuade her to return from her leave early.[12] For these reasons, the District Court properly granted summary judgment in Passport's favor on the interference claim.

### B. Retaliation

O'Donnell also asserts a retaliation claim, alleging that she was discharged because she took FMLA leave. To prevail on a retaliation claim, a plaintiff must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein, 691 F.3d at 301-02. Unlike claims for interference, retaliation claims require a showing of the employer's retaliatory intent. Id. Because O'Donnell presents only circumstantial evidence of intent, we assess her claim "under the burden-shifting framework established in McDonnell Douglas Corp. v . Green, 411 U.S. 792 (1973)." Id. That framework requires that a plaintiff first set forth a prima facie case of retaliation. Id. If O'Donnell does so, "the burden of production shifts to [Passport] to 'articulate some legitimate, nondiscriminatory reason' for its decision." Id. (quoting McDonnell Douglas, 411 U.S. at 802). If Passport meets this burden, then O'Donnell

_____

[12] To the contrary, the record indicates that upon learning of O'Donnell's leave, Penrose wrote in an email to O'Donnell, "I am here to help you in any way I can." App. 448. Similarly, upon speaking with O'Donnell about her leave, Bagwell, her new supervisor, told her that he would be working with O'Donnell "through HR, given your doctor's orders." App. 295. In sum, the record shows Passport supported O'Donnell's medical leave.

must point to some evidence from which a factfinder could reasonably disbelieve Passport's reason. Id.

The parties do not dispute the first two elements of the prima facie claim—that O'Donnell invoked an FMLA right and that she was terminated. Their argument centers on causation. O'Donnell contends that a factfinder could infer that her termination was related to her FMLA leave because Payne's email requiring O'Donnell either to return the signed documents or be terminated was sent only one day after O'Donnell notified Passport of her FMLA leave. Temporal proximity can be sufficiently suggestive to satisfy the causation element at the prima facie stage. See, e.g., id. at 307 (one week between invocation of FMLA rights and adverse employment action is "in the realm of what this Court and others have found sufficient at the prima facie stage").

The problem for O'Donnell, however, is that the requirement that she sign the forms was instituted before she took FMLA leave. As explained above, two weeks before O'Donnell invoked her FMLA rights, Passport required her to sign the offer letter and the non-compete agreement in order to assume her new job. O'Donnell testified in her deposition that she understood that signing those forms was a requirement for the new position.

Even if Passport's decision to enforce its requirement while O'Donnell was on FMLA leave was sufficient to satisfy the causation element, and hence fulfills the first step of the McDonnell Douglas framework, the failure to sign those forms constitutes a legitimate, nondiscriminatory reason for terminating her. Passport was reorganizing its sales force, eliminated O'Donnell's previous position, and offered O'Donnell the

11

opportunity to work as a Vice President contingent on her executing the forms. O'Donnell knew all of this weeks before she invoked her FMLA rights. Passport has therefore met its burden at step two of McDonnell Douglas. Moreover, O'Donnell cannot point to any evidence indicating that the decision to terminate her was pretextual. To the contrary, up until the January 28 deadline elapsed, Passport employees encouraged O'Donnell to return the forms and informed her that they were "glad to hear [she was] interested in accepting" the new position, and that she only needed to complete the forms to do so. App. 238.

Accordingly, there are no facts from which a reasonable juror could find that O'Donnell's termination was based on anything other than the legitimate, non-pretextual reason that she failed to complete the required paperwork to assume the new position. For this reason, the District Court properly granted summary judgment as to O'Donnell's retaliation claim.[13]

### V. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.

---

[13] To the extent that O'Donnell contends that Passport terminated her employment because it discovered she might have a life-threatening illness, that argument is undermined by the fact that Passport allowed her to invoke her FMLA rights based on her doctor's description of her condition, and there is no evidence that any decisionmaker acted on information other than her failure to execute the employment forms in deciding to terminate her.

12