SHAW, Justice.
The United States Bankruptcy Appellate Panel of the Court of Appeals for the Ninth Circuit (“the BAP”) has certified to this Court, pursuant to Rule 18, Ala. R.App. P., the following question: “In Alabama, is a ‘default’ judgment premised upon discovery sanctions or other post-answer conduct of the defendant sufficient to support the application of issue preclusion in a later proceeding?”[1] We answer this question in the negative.

Facts and Procedural History

In its certification to this Court, the BAP provided the following factual background:
“[Anthony A.] Malfatti[, the debtor-defendant in a proceeding filed in the United States Bankruptcy Court for the *1223 Northern District of California,] was one of three principals of TA Financial Group (‘TAF’), a Nevada corporation, purportedly designed to assist credit card holders in arbitration of disputes with the card issuers. The arbitration providers were selected by the card holders from a list provided by TAF. Among the arbitration providers was Arbitration Forum of America, Inc. CAFOA’), an Alabama corporation. Once an arbitration award was entered, a separate company, TAG Services, an Alabama limited liability company, would file the awards in the Circuit Court of Jackson County, Alabama, and then reduce the awards to judgments. In fact, AFOA was not conducting legitimate arbitrations, but instead was a sham. Every arbitration resulted in an award in favor of the card holder, which was then reduced to judgment. Malfatti claims he was unaware that AFOA’s practices and the judgments stemming therefrom were illegitimate.
“At some time after the banks involved learned of the judgments, they filed cross-complaints against the card holders in the Circuit Court of Jackson County, Alabama to set aside the judgments as fraudulently obtained. In September 2005, the banks, including Bank of America, N.A. (USA) and MBNA America Bank, N.A. (together, ‘Banks’ or ‘Appellees’), filed Amended Third Party Complaints against, among others, Malfatti and TAF, alleging tortious interference with contract, abuse of process, wantonness, and civil conspiracy, and seeking an injunction against further arbitrations. Malfatti and TAF were served with the complaints in November 2005, and answered the complaints in January 2006.
“Initially, Malfatti and TAF vigorously contested personal jurisdiction and moved to dismiss the complaints. The court ruled against them on May 25, 2006. Despite the ruling, Malfatti and TAF continued to argue lack of personal jurisdiction throughout the proceedings. Malfatti and TAF also consistently refused to cooperate with discovery. They largely failed to respond to interrogatories and requests for production and failed to appear for noticed depositions on June 13 and 15, 2006, September 12 and 13, 2006, April 17-18, 2007, July 10-11, 2007, and November 13, 2007. They also failed to comply with various discovery orders issued by the court.
“On November 21, 2006, the Banks moved for default judgments against Malfatti and TAF for failure to comply with discovery orders, repeated failures to appear for depositions, and failure to respond to written discovery. The Banks submitted an extensive brief and evidentiary record in support of their motion. Malfatti and TAF belatedly answered some of the discovery, albeit de-ficiently, and filed a joint Objection to Joint Motion of [the Banks] for Entry of Default Judgments. They argued as follows: ‘The [third-party] Defendants respectfully contend that they have not willfully failed to provide or permit discovery to such a degree as to support the most severe sanction of default.’ On March 6, 2007, following a hearing on the Banks’ motion, the Circuit Court of Jackson County entered an order of default against Malfatti and TAF.
“On March 26, 2007, Malfatti and TAF filed a motion to set aside the defaults. The Banks filed an opposition. On October 4, 2007, the Court entered an order denying Malfatti and TAF’s motion to set aside the defaults. It stated[:]
“‘This Court specifically finds and holds that the factors warranting the entry of a default judgment, and denial of a motion to set aside the default *1224 judgement, as set forth by the Alabama Supreme Court in Kirtland v. Ft. Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala.1988), and Zeller v. Bailey, 950 So.2d 1149 (Ala.2006), have been fully satisfied and that the entry of default judgments, while an extreme sanction, was warranted in favor of [the Banks] against [Malfatti and TAF].’
“The court further set a hearing on the Banks’ Motion for Damages, Injunctive Relief, and Entry of Final Judgment for February 4, 2008.
“On January 25, 2008, the Banks filed a joint brief in support of their Motion for Damages and Injunctive Relief. Malfatti and TAF filed an opposition, arguing that there were no ‘reliable, ascertainable, and non-speculative’ damages, and again arguing a lack of personal jurisdiction. At the hearing on February 4, 2008, the court awarded damages in favor of the Banks and entered a permanent injunction precluding Malfatti and TAF from furthering their debt elimination scheme. Judgment was entered against Malfatti and TAF on February 19, 2008.
“The court found Malfatti and TAF to be jointly and severally liable for compensatory damages, awarded punitive damages against Malfatti, and found Malfatti to be liable for punitive damages awarded against TAF under the alter ego doctrine. Damages against Malfatti totaled $513,270.35 (the ‘Judgment’).9 Malfatti and TAF moved to ‘amend, alter, vacate or set aside’ the Judgment, and filed for summary judgment on their claims against the Banks. The court denied both motions.
“Malfatti filed for Chapter 7 bankruptcy on April 27, 2009. On July 30, 2009, the Banks filed an adversary proceeding alleging the debt owed to them by Malfatti was nondischargeable pursuant to § 523(a)(6).[2] On March 3, 2010, the Banks moved for summary judgment, alleging that the Alabama Judgment was nondischargeable by virtue of issue preclusion. Malfatti opposed the summary judgment on the basis that the Judgment was a default judgment, arguing that Alabama law does not grant issue preclusive effect to default judgments. The bankruptcy court granted summary judgment, finding all amounts owed to the Banks to be nondischargeable. Malfatti appealed.
“9 In relevant part, the Judgment states that the Banks
“ ‘[h]ave suffered, are suffering and will continue to suffer immediate and irreparable harm to their business as a proximate result of these Third Party Defendants’ wrongdoing. If these Third Party Defendants are not enjoined from promoting, facilitating and conducting sham debt elimination schemes and facilitating sham arbitration proceedings, [the Banks’] rights will be irreparably harmed even as they are required to expend excessive resources addressing each and every one of these actions. [The Banks] have also suffered and will continue to suffer ... injury to their relationships *1225 with their customers and harm to their goodwill and reputation if these Third Party Defendants are allowed to persist in their wrongful efforts to convince cardholders and others that [the Banks] are engaged in illegal activity and to advise them to disregard their legally incurred debts. The actions taken by these Third Party Defendants resulted in unduly thwarting ... [the Banks’] lawful attempts to collect money that is due to them. By advising cardholders not to pay their debts, these Third Party Defendants have not only delayed payment ..., but in some eases can and have compromised the financial condition of cardholders, causing or contributing to their inability to make payments on their debts.’ ”
(Some footnotes omitted.) In connection with Anthony A. Malfatti’s appeal of the summary judgment against him by the bankruptcy court, the BAP certified the above question to this Court.

Discussion

Under Alabama law, the elements necessary for the application of the doctrine of collateral estoppel (or issue preclusion, as it is now more commonly called, see New Hampshire v. Maine, 532 U.S. 742, 748-49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)), are well established:
“For a prior judgment as to an issue to have a preclusive effect on a party’s later relitigation of that issue, it must be shown that the person against whom the preclusive effect is sought, or a person in privity with that person, was a party to the prior litigation in which the issue was decided and that the issue for which preclusion is sought was actually litigated in the prior action. See Dairyland Ins. Co. v. Jackson, 566 So.2d 728, 726 (Ala.1990) (listing the elements of collateral estoppel).... Moreover, an issue has not been actually litigated in a prior action if that action was resolved by a default judgment. See AAA Equip. & Rental, Inc. v. Bailey, 384 So.2d 107, 112 (Ala.1980) (discussing the doctrine of collateral estoppel and distinguishing another case that had held that collateral estoppel was applicable because, with regard to the other case, ‘[i]n the first suit that issue was actually litigated, that is, the judgment rendered in it was not based upon default, stipulation, or consent. Cf. Matter of McMillan, 579 F.2d 289 (3rd Cir.1978) (issues involved in an action terminated by default judgment not “actually litigated” for purpose of collateral estoppel).’); Martin v. Cash Express, Inc., 60 So.3d 236, 253 (Ala.2010) (Lyons, J., concurring in the result) (‘If the previous judgment is by default ... then there can be no collateral estoppel or issue preclusion because nothing was “actually litigated” in the default judgment.’).”
McDaniel v. Harleysville Mut. Ins. Co., 84 So.3d 106, 111-12 (Ala.Civ.App.2011). See also Walker v. City of Huntsville, 62 So.3d 474, 487 (Ala.2010) (“ ‘For the doctrine of collateral estoppel to apply, the following elements must be established: (1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions.’ ” (citations and internal quotation marks omitted)).
It is clear from the foregoing, as the BAP acknowledges and the parties concede, that Alabama law does not afford collateral-estoppel/issue-preclusive effect to default judgments because a default judgment, by its very nature, cannot satisfy the requirement that the issue has been “actually litigated” in a prior action. See, e.g., Crowder v. Red Mountain Mining Co., 127 Ala. 254, 258, 29 So. 847, 849 (1900) (“While a judgment by default is a judgment on the merits of the cause of action contained in the complaint, yet there is no contest, nor is there any issue litigated. The confession by default does not extend further than to the legality of *1226 the demand made by the complaint”). Our law is in keeping with “[t]he general federal rule,” which is explained by the United States Court of Appeals for the Eleventh Circuit in Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.Bd 1319 (11th Cir.1995), as follows:
“Ordinarily a default judgment will not support the application of collateral es-toppel because ‘[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.’ Restatement (Second) of Judgments § 27 cmt. e (1982). See also Restatement of Judgments § 68 cmt. d, e (1942). The circuits which have considered the issue in the context of bankruptcy discharge exception proceedings have adhered to this view. See e.g., Spilman v. Harley, 656 F.2d 224, 228 (6th Cir.1981) (‘If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court.’) (emphasis added); In re: Raynor, 922 F.2d 1146, 1150 (4th Cir.1991), In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir.1983); In re McMillan, 579 F.2d 289, 292 (3d Cir.1978).”
62 F.3d at 1323 (footnote omitted). See Restatement (Second) of Judgments § 27 comment e, at 257 (1982) (“In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.”). See also IB James William Moore, Moore’s Federal Practice § 0.444[2] (3d ed.1984) (noting that the better view is that, as a general proposition, a default judgment should have no collateral-estoppel effect), and 18A C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice and Procedure § 4442, at 236 (2002) (“Judgment by default in the technical sense that the issues have not been litigated does not warrant issue preclusion for the very reason that the issues have not been litigated or decided.”).
Under Alabama law, a so-called “simple default” entered upon a party’s failure to answer and defend does not satisfy the “actually litigated” requirement of collateral estoppel and issue preclusion and, thus, has no preclusive effect in a subsequent action. Malfatti contends that that same principle is applicable, too, in cases such as his, where a so-called “penalty default” is imposed as a sanction based upon a party’s alleged misconduct in failing to comply with discovery dictates.[3] Bank of America, N.A., and the other banks (hereinafter referred to collectively as “the banks”), on the other hand, argue that, in keeping with the “modern trend” as demonstrated by recent decisions in a majority of the federal circuits, penalty defaults present an entirely different situation, one where any failure to actually litigate is caused by the defaulting party, who had every available opportunity to litigate the merits of the pending claims but, through his own malfeasance, deprived himself of that opportunity. More specifically, the banks contend that collateral estoppel/issue preclusion is — or at least should be — applicable and that the “actually litigated” requirement is satisfied when the defaulting party has substantially participated in the litigation process prior to default, i.e., has had a full and fair opportunity to defend against the litigation, and when the defaulting party’s own conduct warranted the sanction of default.
*1227 This Court has not previously been called upon to consider whether a default judgment imposed as a discovery sanction pursuant to Rule 37, Ala. R. Civ. P., should be treated differently than any other default judgment. Instead, it is clear that existing Alabama law with respect to the effect of collateral estoppel/issue preclusion does not distinguish between a default judgment entered as a result of a party’s failure to litigate and a default judgment entered as a penalty for a party’s failure to comply with court rules and/or orders. Indeed, we find nothing to suggest that our jurisprudence has made any distinction based on the nature or the source of the default.
We recognize, based upon our review of the extensive citations to authorities included in the BAP’s certification of the question and in the parties’ briefs to this Court, that, although the appellate courts of Alabama have not addressed the issue whether an exception to our rule denying preclusive effect to default judgments should apply when the default was entered as a discovery penalty, various federal courts have addressed this issue in the context of bankruptcy-dischargeability proceedings and have carved out an exception when the underlying default is entered for a reason other than the defaulted party’s negligence or election not to participate. See, e.g., Bush, 62 F.3d at 1324 (applying issue preclusion to prior default judgment against debtor where debtor “actively participated” in litigation for almost one year); In re Gober, 100 F.3d 1195, 1205 (5th Cir.1996) (holding that issue preclusion applied where a default judgment was issued as a discovery sanction against debtor after two years of litigation); and Federal Deposit Ins. Corp. v. Daily (In re Daily), 47 F.3d 365, 368-69 (9th Cir.1995) (applying issue preclusion to default judgment after debtor actively and obstructively participated in litigation for two years). Specifically, the exception noted by these federal courts applies, and the “actually litigated” requirement of issue preclusion is deemed met, if a penalty default is entered after a party “actually participated in the prior litigation and had a full and fair opportunity to litigate, but the issue was resolved by default as a sanction on account of that party’s obstructive behavior.” Melnor, Inc. v. Corey (In re Corey), 394 B.R. 519, 527-28 (B.A.P. 10th Cir.2008).[4] See also Bush, 62 F.3d at 1325 (“Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort *1228 to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.” (footnote omitted)). Under the exception, “a default judgment has been given preclusive effect when it is rendered as a discovery sanction” on the following policy grounds: “[A] litigant who abuses the processes and dignity of the court by obstructing the discovery process should not, at a later time, be given the opportunity to litigate an issue [that] could have been previously decided.” Ronk v. Maresh (In re Maresh), 277 B.R. 389, 346 (Bankr.N.D.Ohio 2001) (citing Wolstein v. Docteroff (In re Doeteroff), 133 F.3d 210, 215 (3d Cir.1997)).
For purposes of determining whether an issue is precluded by the doctrine of collateral estoppel, Alabama law makes no distinction between a simple default and a penalty default. There are “clear controlling precedents in the decisions,” Rule 18, Ala. R.App. P., of this Court adhering to the traditional federal view denying pre-clusive effect to all default judgments on the ground that preclusive effect should not be given to claims that were not actually litigated in a prior action. See McDaniel, supra (citing precedent from this Court), and Crowder, supra. Accordingly, we answer the question certified to us by the BAP in the negative. See Talarico v. Martel (In re Martel) 332 B.R. 922 (Bankr.M.D.Fla.2005) (noting that New Jersey law did not distinguish between a penalty default and a simple default, collateral estoppel did not apply to a default judgment, and the exception adopted by some federal courts was not recognized by New Jersey law as it stood; thus, no exception to the rule that collateral estoppel did not apply to a default judgment was applicable); and Treglia v. MacDonald, 430 Mass. 237, 717 N.E.2d 249 (1999) (in which the Massachusetts Supreme Judicial Court, on a certified question from the Bankruptcy Appellate Panel for the United States Court of Appeals for the First Circuit, recognized the general rule that default judgments have no recognized preclusive effect for purposes of collateral estoppel).
QUESTION ANSWERED.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, MAIN, and WISE, JJ., concur.

. We do not read the certified question as inviting this Court to apply the law to the facts of the underlying case pending before the BAP. With no record before us, we are not equipped to perform such a fact-intensive analysis, which is nonetheless more appropriately within the purview of the BAP or the bankruptcy court.

. As explained by the BAP, 11 U.S.C. § 523(a)(6) “provides that a discharge under the [Bankruptcy] Code does not discharge an individual debtor from any debt 'for willful and malicious injury by the debtor to another entity or to the property of another entity.’ ” Further, according to the BAP, "[ijssue preclusion may be applied in nondischargeability proceedings under § 523(a).” (Footnote omitted.) See Grogan v. Garner, 498 U.S. 279, 284-85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The BAP cited Gayden v. Nourbakhsh, 67 F.3d 798, 800 (9th Cir.1995), for the proposition that a state court judgment is entitled to issue-preclusive effect in a subsequent federal court proceeding to the same extent that it would be entitled to issue-pre-clusive effect in a court of the state that entered the judgment.

. Malfatti argues in his reply brief that the default judgment entered against him here is, rather than entirely a penalty default, actually something of a “hybrid” default judgment in that it both defaulted Malfatti based on his conduct during discovery but also imposed liability on Malfatti for the simple default entered against TAF, which was based solely on TAF's failure to answer and defend.

. A minority of courts have criticized the arbitrariness of the exception because of the subjective nature of the inquiry as to whether a party’s participation was sufficiently substantial or the party's conduct sufficiently egregious to justify the application of the exception and the difficulty in determining the defaulted party’s motive or subjective intent. See Shephard v, O'Quinn (In re O’Quinn), 401 B.R. 739, 744 n. 2 (Bankr.M.D.N.C.2009) (citing Federal Ins. Co. v. Gilson (In re Gilson), 250 B.R. 226 (Bankr.E.D.Va.2000)); Navab v. Barzegar (In re Barzegar), 189 B.R. 864, 871 (Bankr.N.D.Ga,1995). Further criticism also includes the observation that extending preclusive effect to a default judgment entered in nonbankruptcy litigation “enlarge[s] the ambit of § 523 without a hearing on the merits of the § 523 complaint" despite the fact that ’’[n]owhere in § 523 is failure to comply with discovery listed as a nondischargeable obligation.” Gil-son, 250 B.R. at 235. In addition, there is authority suggesting that equating a " 'full and fair opportunity to litigate' [with actual litigation] ... mistakenly conflates two separate requirements for collateral estoppel," namely that "the specific issue was actually litigated in the prior action ... and, [that] the party seeking to relitigate previously enjoyed a ‘full and fair opportunity to litigate' the issue, even if that party chose not to do so." Sartin v. Macik, 535 F.3d 284, 290 (4th Cir.2008).