[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11658
_____

D.C. Docket No. 7:08-cv-01035-SLB


CAROLYN SIMMONS,
as Administratrix of the Estate of Terri Franks,

Plaintiff-Appellant,

versus

INDIAN RIVERS MENTAL HEALTH CENTER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 13, 2016)

Before WILSON and MARTIN, Circuit Judges, and RODGERS,[*] District Judge.

PER CURIAM:

Carolyn Simmons, as Administratrix of the Estate of Terri Franks, appeals the district court's disposition of the Family and Medical Leave Act ("FMLA") claims of Terri Franks.[1] *See* 29 U.S.C. § 2601, *et seq.* After being fired following a period of medical leave, Franks filed claims of FMLA interference and retaliation against her employer, Indian Rivers Mental Health Center ("Indian Rivers"). We are asked to consider whether the district court properly applied issue preclusion to bar Franks from relitigating the reason for her termination. The district court decided that a prior state agency unemployment compensation decision should be given preclusive effect because the agency had found that Franks had been terminated for misconduct. We conclude on the specific facts of this case that Alabama law would not apply issue preclusion to the agency determination. Therefore, after careful consideration and with the benefit of oral argument, we reverse and remand Franks's FMLA termination claims for trial. We affirm in all other respects.

---

[*] Honorable Margaret C. Rodgers, Chief United States District Judge for the Northern District of Florida, sitting by designation.

[1] Sadly, Terri Franks died during the pendency of this lawsuit. Her mother, Carolyn Simmons, was appointed as Administratrix of her estate and substituted as Plaintiff before trial. At issue in this appeal are two summary judgment orders and an order of the district court following a bench trial.

## I. BACKGROUND

### A.    Job Performance

Terri Franks, a Licensed Professional Counselor in the State of Alabama, was hired by Indian Rivers in 1993.  Indian Rivers provides mental health and mental retardation services for individuals in several Alabama counties.  In 2006, Franks was promoted to Adult Outpatient Program Manager with responsibility for intake assessment, probate matters, the Crisis Response Team and Substance Abuse Services, group and individual therapy, crisis intervention, and mental retardation services.  One of her main responsibilities was to oversee, conduct and certify patient Treatment Plan Reviews ("TPRs"). The record reflects that the TPR process, established by the State Department of Mental Health and Medicaid, requires a certified reviewer to review patient treatment plans on a set schedule every 90 days for Medicaid and residential patients and once yearly for self-pay and private insurance patients.  As part of the claims repayment process, the reviewer must certify that each treatment plan is medically necessary, that goals remain appropriate, that the documentation accurately reflects the treatment being provided, and that continued treatment is recommended.  Franks was a certified TPR reviewer and responsible for developing the TPR form used by Indian Rivers. She also trained other staff members on the TPR process.  At the request of her supervisor, Clinical Director Connie Robbins, Franks created a system for

3

monitoring and tracking TPR due dates to ensure that Indian Rivers was in full compliance with all state and federal legal requirements.  Thus, Franks was well aware of the Medicaid guidelines and the TPR process, including the importance of timely documentation and avoiding duplicate billing.

According to Robbins, Franks failed to follow through with TPRs that were due in August and September of 2006.  Robbins provided Franks with a new chart to follow to remedy the situation but also added more cases to her caseload.  By March and April 2007, there were numerous TPRs again waiting for Franks's review and signature.  On April 4, 2007, Robbins met with Franks about her performance and drafted a detailed memo outlining her poor management, stating, "[f]or the second time now in less than a year, updating the [Adult Outreach Program] TPRs has become a crisis," due to Franks's failure to follow the system.  Robbins told Franks that this had "resulted in a payback of greater than $40,000" to Medicaid and required work by numerous other employees to remedy the situation.[2]  In a responsive memo dated April 11, 2007, Franks acknowledged having had difficulty completing all of the TPRs but explained that Indian Rivers had "a broken system on many levels" due to human error and staffing inadequacies.  Also, Franks said she often did not receive a copy of the necessary Medicaid reports, which interfered with her ability to review the appropriate files

---

[2] The district court noted that nothing in the record confirmed a payback to Medicaid of $40,000 attributable to Franks.

in a timely manner. Franks offered various suggestions for how she intended to improve her performance as a manager and stated she expected to receive the Medicaid reports so she could effectively manage the TPRs.  She also denied being told previously that she was responsible for a Medicaid payback of $40,000 and insisted she should not be held responsible if a payback resulted from someone receiving a benefit without her being aware of it.

## B.    FMLA Leave and Termination

A few days after the memo, on April 15, 2007, Franks went to the emergency room due to debilitating neck pain, and the following day she learned she needed surgery.  Franks called Robbins and Rita Harless, Human Resources Director for Indian Rivers, to inform them of her condition and need for medical leave through May 1, 2007.[3]  Harless informed Franks that she needed to submit her FMLA paperwork, including a physician's certification, within 10 days. Franks picked up the paperwork on April 17 and attempted to submit some information by email the same day, but Harless was unable to access the emails due to computer problems.  On April 26, Robbins documented that Franks had not yet provided her or Harless with information about the surgery.  On April 27, after not being able to reach Franks by email or telephone, Harless sent her a letter, reminding her of the need to submit the required FMLA documentation and that

---

[3] Franks was out on medical leave until June 26, 2007, a total of ten weeks.

5

Indian Rivers had to be able to communicate with her while she was on leave.[4]
She gave Franks an additional 10 days to provide the required physician's
certification because Indian Rivers still had not received any documentation from
Franks's physician. Harless and Franks also spoke by telephone on April 27, and a
recording of the conversation reflects that Harless told Franks that management
positions can be excluded from FMLA and that Franks was still "expected to
function and communicate in a limited capacity" while on leave "so others can
continue to keep the business going." Franks faxed the physician's order to Indian
Rivers that day, and her physician submitted the certification forms on April 30.
Franks's FMLA leave was then approved retroactive to April 16.

On April 19, Franks sent Robbins a memo in which she complained of
receiving numerous work-related telephone calls during the first few days of her
medical leave. She had documented eight such telephone calls, seven from
Robbins and one from another staff member, B. Johnson. Robbins's testimony
confirms that for each of her seven calls to Franks, she merely left a message
concerning work-related matters, such as requesting information on the location of
treatment plans and inquiring about the location of a crisis telephone used by the

---

[4] Harless stated in the April 27th letter that Franks had told her and Robbins about the doctor's work excuse note but still had not provided it. She also said in the letter that she had tried to reach Franks "several times" by phone (cell and home) and stressed the importance of management-level responsibilities, explaining, "the Organization must be able to communicate with you during your absence and you are expected to follow policy and procedure for this and all other work related issues."

6

crisis response team.[5] Robbins made one additional brief call to Franks, which was recorded. In her deposition testimony, Franks named four other staff members with whom she had spoken by telephone during her leave, but she did not state who initiated those calls or how many calls there were. Franks informed Robbins and Harless that she had documented the calls and would keep track of her time if she were required to perform work for Indian Rivers during her medical leave, but no other call documentation was presented. However, Franks's mother, Simmons, testified at trial that she cared for Franks after her surgery for five out of seven days a week and said Franks "could have three to five phone calls from Indian Rivers" per day while she was there.[6] Simmons said Franks would take the calls if she was awake and the calls were sometimes short in duration and other times lasted from three to five minutes. Simmons also admitted that she had memory difficulties at the time of Franks's medical leave in 2007.[7]

---

[5] In her EEOC complaint, Franks referred to these calls as "insignificant questions regarding [her] job duties."

[6] Carolyn Simmons's deposition testimony was not taken taken during discovery and therefore was not part of the summary judgment record. She was allowed to testify at trial only because Franks had died.

[7] In particular, Simmons testified that Franks always recorded the calls, even when Simmons was there to answer them, because Simmons had difficulty remembering messages and names. Simmons also testified that she subsequently suffered a medical issue in 2013 that caused her to lose some memory. The events at issue in this case occurred in 2007, and trial was in 2015.

While Franks was on FMLA leave, Indian Rivers discovered numerous unsigned TPRs and employee leave requests on her desk.[8]  Indian Rivers also performed an audit of Franks's patient files while she was out and found billing irregularities.  According to the Accounting Department, Franks had billed an impossibly large number of TPRs between March 28 and April 4, before taking FMLA leave, 20 of which were duplicates.  As a result, Indian Rivers locked Franks's office and suspended her remote computer access.[9]  Harless informed Franks of the job performance concerns she had discovered and of the need to discuss the matter on Franks's return to work.

Indian Rivers also terminated Franks's on-call pay while she was on leave. Harless testified at trial that on-call pay is a yearly stipend divided into 26 pay periods and that Franks continued to receive on-call pay as long as she was available to work the on-call rotation at any time during a particular pay period.[10] Harless explained that Franks's on-call pay was removed in May 2007 after the

---

[8] Franks explained in her affidavit that the work on her desk was in progress when she was unexpectedly placed on medical leave.

[9] In a letter dated May 29, 2007, Harless informed Franks of these concerns and explained, "to preserve all relevant records and for your protection, we have suspended anyone from having access to your computer and office and any remote access to our records."

[10] Franks stated in her affidavit that "it had never been the practice of Indian Rivers to stop the on-call salary of any team member on leave before it happened to me during FMLA leave," and instead, the team members would simply cover for one another by rearranging their on-call dates. At trial, however, the district court excluded this statement, finding that Franks did not have personal knowledge regarding Indian Rivers' on-call pay policy.

records showed she had been on FMLA leave for the entire pay period, which took her out of the on-call rotation.

Franks's paid leave time was exhausted on June 8, 2007. She remained on unpaid FMLA leave through August 25, 2007. On the day Franks returned to work, she met with Executive Director Jim Moore to discuss the job performance issues Indian Rivers had discovered during her leave. Moore discussed the problems with Franks, and Franks attempted to provide explanations for the irregularities noted in her performance, pointing out, for instance, that the billing logs were not in her handwriting. Moore nonetheless terminated Franks's employment that day, notwithstanding Indian Rivers' progressive disciplinary policy.

## C.    Unemployment Compensation Proceedings

On July 1, 2007, Franks applied for unemployment compensation, identifying the reason given for her discharge as "misconduct." When the Alabama Department of Industrial Relations ("ADIR") Claims Examiner notified Indian Rivers of the claim, it responded with a brief, hand-written and unsworn explanation, stating that Franks was terminated for, "Repeated failure to complete assigned objective; code of conduct violation – No. 2; submission of claims that represent that services all or part of which were not performed." Based on this unsworn response, the Claims Examiner determined that Franks was disqualified

from receiving benefits, citing Ala. Code § 25-4-78(3)(a) (1975), which provides that a claimant is disqualified from receiving benefits if discharged for a dishonest or criminal act in connection with work.

Franks appealed and requested a hearing, which was scheduled for August 24. However, Franks had secured new employment on July 30 and did not attend the hearing. Indian Rivers appeared by telephone but presented no testimony or other evidence. The Hearing Officer determined that "the nonappearance of the appellant and the absence of additional evidence require[d] the Administrative Hearing Officer to make a decision based upon the evidence contained in the file, which consists of prior statements not under oath." The Hearing Officer then concluded that there was no basis for any change in the Claims Examiner's determination. Franks did not appeal the decision administratively or seek judicial review in state court.

## D.    District Court Proceedings

After filing a charge of FMLA discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC), Franks filed this FMLA suit.[11] Indian Rivers moved for summary judgment, which the district court granted in part on some of the FMLA interference claims. The district court found no FMLA

---

[11] Franks also alleged a violation of HIPAA and state law claims of invasion of privacy, negligent hiring, training, supervision, and retention, and intentional infliction of emotional distress, none of which is at issue in this appeal.

10

interference based on the removal of the on-call crisis response team pay because Franks was not available to take the crisis calls, likening the pay to a bonus based on production goals. The district court also found that the work-related telephone calls Franks received from Indian Rivers' staff during her leave did not constitute interference by themselves, but the court found there was a question of fact as to whether Franks was required to work during her FMLA leave, which precluded summary judgment on the interference claim. The court also found questions of fact as to pretext on Franks's retaliation claim related to her termination, and the case was set for trial.[12]

Shortly before trial, Indian Rivers raised the argument that Franks's retaliation claim was barred by issue preclusion in light of the ADIR's prior determination that she had been fired for misconduct.[13] The district court agreed, finding that the Hearing Officer necessarily determined that Franks was terminated for dishonest conduct at work. The district court found it significant that the Hearing Officer did not declare a default and instead based the decision on "the evidence in the file." The district court concluded that the ADIR had made a

---

[12] Regarding her termination, Franks claimed both FMLA interference and retaliation, but Indian Rivers moved for summary judgment only on the retaliation claim.

[13] The issue had been raised initially in Indian Rivers' answer but not in its summary judgment motion. When Indian Rivers raised the issue in its proposed pretrial order, the district court sua sponte moved for summary judgment on the issue and gave Franks an opportunity to respond.

11

necessary determination on the merits regarding the reason for the termination and thus precluded Franks from relitigating the issue under the FMLA.

The case proceeded to a bench trial on Franks's remaining interference claim that Indian Rivers had required her to perform work during her FMLA leave. The district court ultimately decided Indian Rivers did not interfere with Franks's FMLA leave because there was no evidence that Franks had performed work during her leave. The court found that the work-related telephone contacts were "brief and limited to reasonable inquiries 'about the location of files or passing along institutional status or knowledge' to those who would cover Franks's responsibilities and duties during her absence." Additionally, the district court refused to consider claims based on the removal of on-call pay, misinformation about the time allowed for providing a doctor's certification, and Franks being told she had to be available to answer questions, which the court found were not within the scope of the Complaint; alternatively, the court concluded that even considering these facts, there was no FMLA interference. Ultimately, the district court entered final judgment in favor of Indian Rivers, and Simmons appealed.

## II.  Standards of Review

We review a grant of summary judgment de novo, applying the same standards as the district court.  *See White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1193 (11th Cir. 2015).  "Summary judgment is appropriate if 'the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We also apply de novo review to the district court's interpretation of state law, including whether to apply the principles of collateral estoppel or issue preclusion. *See Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1177 (11th Cir. 2013). "After a bench trial, we review the district court's conclusions of law *de novo* and the district court's factual findings for clear error." *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015) (quoting *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009)).

## III.  Discussion

### A.    Issue Preclusion

Simmons argues that the district court erred by applying issue preclusion to bar Franks's FMLA retaliation claim on the facts of this case.  Alabama law governs this issue.  *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S. Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (stating that when a state agency acts in a judicial capacity, federal courts "give[ ] the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."). In Alabama, issue preclusion applies to a state administrative agency's decision when: "(1)

13

there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision." *Wal–Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442, 445 (Ala.1999) (quoting *Ex parte Smith,* 683 So. 2d 431, 433 (Ala. 1996)), *overruled on other grounds by Ex Parte Rogers*, 68 So. 3d 773 (Ala. 2010). In the past, courts in Alabama have given preclusive effect to a prior ADIR finding that an employee was discharged for misconduct. *See Wal– Mart Stores, Inc. v. Hepp,* 882 So. 2d 329, 332-35 (Ala. 2003), *overruled on other grounds by Ex parte Rogers*, 68 So. 3d 773 (Ala. 2010);[14] *Smitherman*, 743 So. 2d at 445-46. Notwithstanding these cases, we conclude that Alabama law compels a different result on the facts of this case.

Here, there is no question regarding identity of parties and identity of issues. Indeed, the parties are the same. Further, the Hearing Officer identified the issue before the ADIR as: "Whether the claimant was discharged or removed from work for a dishonest or criminal act committed in connection with his work . . . ." *See* Ala. Code § 25-4-78(3)(a). And for FMLA purposes, "an employer can deny

---

[14] In *Rogers*, the Alabama Supreme Court ruled that the employer has the burden to prove that a claimant is disqualified from receiving unemployment compensation benefits on the basis of misconduct, overruling *Hepp* and *Smitherman* to the extent they held otherwise. 68 So. 3d at 781.

reinstatement 'if it can demonstrate that it would have discharged the employee had [s]he not been on FMLA leave.'" *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (quoting *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001)).  Thus, the *reason* for Franks's termination was at issue in both proceedings. *See Smitherman*, 743 So. 2d at 446 (finding identity of issues because the reason for the discharge was at issue in the unemployment determination and also in the subsequent suit for retaliation).

We find it unnecessary in this case to consider the third factor of whether there was an adequate opportunity to litigate the issue in the administrative proceeding because, even assuming there was, *see Smitherman*, 743 So. 2d at 446-47, the remaining factors are not satisfied.  The fourth and fifth factors, requiring that the issue was "actually litigated" and that the findings were "necessary" to the administrative decision, are intertwined in this case because Simmons argues the ADIR decision was effectively a default, and thus, neither factor is satisfied.  We agree.  The district court concluded instead that the Hearing Officer necessarily determined, after considering and examining "the evidence" contained in the file, that Indian Rivers had terminated Franks for dishonest conduct.  The problem with this conclusion, however, is that the file contained no "evidence."  The Hearing Officer's decision acknowledges that the record contained only unsworn

statements.[15]  A federal court gives a state agency determination preclusive effect only when the agency is "acting in a judicial capacity."  *Elliott,* 478 U.S. at 799, 106 S. Ct. at 3226 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)).  Because the record contained only unsworn statements, there was no competent evidence from which the Hearing Officer or Claims Examiner could make a merits determination in a judicial capacity, and thus, we cannot find that the issue was "actually litigated."[16] *See Malfatti v. Bank of America, N.A.*, 99 So. 3d 1221, 1225-26 (Ala. 2012) (explaining that a default is not given preclusive effect because nothing is "actually litigated").  Additionally, Franks failed to appear at the hearing and had no incentive to litigate the issue given that she had obtained employment less than a month after her termination and prior to the agency hearing.  Pursuant to

---

[15] In both *Hepp* and *Smitherman*, where issue preclusion was applied, a hearing had been held in which both parties participated and presented testimony or other evidence to the agency. The Alabama Administrative Code contemplates that a hearing will involve the presentation of relevant evidence and testimony given under oath. *See* Ala. Admin. Code r. 480-1-4-.04.  But here, there was none.

[16] We reject Indian Rivers' contention that the Hearing Officer's determination was a merits decision on an unopposed record comparable to *Smith v. Lawyers Sur. Corp.*, 624 So. 2d 526, 527-28 (Ala. 1993).  In *Smith*, contrary to the ADIR proceedings at issue here, there was a competent and undisputed summary judgment record that included affidavit testimony.  The instant case is more akin to a default judgment based on pleadings alone, which is not given preclusive effect under either Alabama or federal law because nothing was "actually litigated." *See, e.g., Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1323 (11th Cir. 1995) ("Ordinarily, a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.' Restatement (Second) of Judgments § 27 cmt. e (1982)" (alteration in original)); *Malfatti,* 99 So. 3d at 1226 (quoting *Bush*, 62 F.3d at 1323).

administrative regulations, where a claimant fails to appear after having received notice of the hearing, the Hearing Officer has discretion to make a decision on the merits or declare a default.  *See* Ala. Admin. Code r. 480-1-4-.10(2).  Because the hearing officer had the option to declare a default, and Indian Rivers presented no evidence, it cannot be said that a decision on the merits was "necessary."  Accordingly, for this reason as well, we find that the district court erred in applying issue preclusion, and the case must be remanded for a trial on the claims related to Franks's termination.

## B.    FMLA Interference

Simmons also appeals the district court's findings that Indian Rivers did not interfere with Franks's FMLA leave by making telephone calls to her during her FMLA leave and by removing her on-call pay.  It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  To prove a claim of FMLA interference, a plaintiff must demonstrate, by a preponderance of the evidence, the denial of an FMLA benefit to which she was entitled "and that she 'has been prejudiced by the violation in some way.'"  *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L.Ed.2d 167 (2002)).  A plaintiff is not required to show that the employer acted with an intent to deny the FMLA benefit but only

17

that the plaintiff was "entitled to the benefit denied." *See Strickland,* 239 F.3d at 1207.

In reviewing the district court's findings, we construe the facts in the light most favorable to the prevailing party and give "substantial deference to the factfinder's credibility determinations, both explicit and implicit." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). We will overturn the district court's findings of fact only for clear error, and we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). The district court's factfinding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L.Ed. 746 (1948)); *see also Morrissette–Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007).

### 1.    Telephone Calls

Simmons argues that the district court erred in concluding that the telephone calls from staff members of Indian Rivers did not rise to the level of interference, insisting that by having to receive and respond to calls Franks was required to work without compensation during her leave. An employer violates the FMLA by

18

requiring an employee to perform work during FMLA leave. *See Evans*, 762 F.3d at 1297 (noting that even if an employee is paid for work during FMLA leave, "if an employer coerces an employee to work during her intended FMLA leave period and, subsequently, reassigns her based upon her allegedly poor performance during that period, the employee may well have been harmed by the employer's FMLA violation"); *Arban v. West Pub'g Corp.*, 345 F.3d 390, 405 (6th Cir. 2003) (recognizing that terminating an employee's employment for refusing to perform a work-related task while on medical leave amounts to interference with FMLA rights). Similarly, an employee who takes FMLA leave cannot be required to remain "on call" to the employer throughout the leave period. *See, e.g., Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 70-71 (D. Mass. 2000) (noting it is FMLA interference to condition leave on the willingness to remain "on call" or to fire an employee for not responding to telephone calls or performing work while on FMLA leave).

The district court expressly credited Robbins's testimony concerning the number, length, and content of the telephone calls and found that the calls were occasional, brief, limited in scope, and did not require Franks to perform work at home. Simmons criticizes the district court for failing to credit her testimony that Franks "could have three to five calls" per day from Indian Rivers while she was caring for Franks, which meant that Franks could have received up to 25 calls per

19

week after her surgery.  We accord "substantial deference" to both explicit and implicit credibility determinations of the factfinder. *Lewis*, 674 F.3d at 1303.  Our "function is not to decide factual issues *de novo*;" instead, we must affirm "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," even if it is possible to weigh the evidence differently. *Anderson*, 470 U.S. at 573-74, 105 S. Ct. at 1511.  In other words, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

In this case, we are not left with a "definite and firm conviction that a mistake has been committed," *id.* at 573, 105 S. Ct. at 1511 (quoting *United States Gypsum Co.*, 333 U.S. at 395, 68 S. Ct. at 542), and thus, the district court's implicit rejection of Simmons's testimony is not clear error.  Simmons admitted she had memory problems, and no other testimony supported a finding that Franks received 25 calls per week from staff.  Moreover, the FMLA does not create an absolute right to be left alone.  *See e.g., O'Donnell v. Passport Health Comms., Inc.*, 561 F. App'x 212, 218 (3d Cir. 2014) (unpublished); *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005) ("Finally, contrary to Callison's assertion, there is no right in the FMLA to be 'left alone.'").  On the facts of this case, the district court did not err in finding that interference had not been established because Franks received only occasional and brief telephone calls of a

limited nature, she was not required to perform work during her FMLA leave, she received all the leave she was due, and she suffered no consequences for refusing to take or respond to occasional telephone calls while she was on leave.[17]

### 2.    Removal of On-Call Pay

Simmons also argues that it was FMLA interference to remove Franks's on-call pay while she was on FMLA leave.  In particular, Simmons argues that the district court erred in granting summary judgment on this claim because Franks's affidavit created a question of fact by showing it was not Indian Rivers' policy to stop the on-call salary of a team member on leave.  She also argues the court erred by finding that the on-call pay was a performance bonus, as opposed to a yearly stipend, and by concluding at trial that this claim was beyond the scope of the Complaint.

We may affirm the district court's judgment or a grant of summary judgment "on any basis supported by the record."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (quoting *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001)); *Koziara v. City of Casselberry*, 392 F.3d 1302, 1306 n.2 (11th Cir. 2004).  Despite the grant of summary judgment on this claim and the

---

[17] Although the district court noted that some federal courts have recognized a "professional courtesy" exception that permits occasional work-related contact during FMLA leave, s*ee, e.g., Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009); *Kesler v. Barris, Scott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 910-11 (E.D. Mich. 2007), we find it unnecessary to reach that issue or to endorse such a blanket exception in this case.

conclusion that the claim was beyond the scope of the Complaint, the district court effectively reconsidered the issue at trial and ruled alternatively that the facts did not show FMLA interference.  At trial, the district court found Franks's affidavit testimony regarding Indian Rivers' on-call pay policy inadmissible for lack of personal knowledge and instead allowed Harless, who had personal knowledge of the policy, to testify to it.  Harless explained not only that the crisis response pay was a stipend distributed throughout the year but also that a crisis response team member would continue to receive the pay only for as long as the member was available to work the on-call rotation at some time during a particular pay period.  She testified that Franks's on-call pay was removed in May 2007 after pay records reflected that Franks had been on FMLA leave for the entire pay period, which took her out of the on-call rotation, and thus, she was not entitled to the pay.  On this record, we agree with the district court's alternative conclusion that the removal of Franks's on-call pay did not amount to FMLA interference.

### 3.    Remaining FMLA Interference Claims

Simmons also argues the district court erred by limiting the scope of Franks's FMLA interference claim to the factual averments of the Complaint.  The district court noted that at trial Simmons attempted to expand the Complaint to include a claim that Franks was misinformed of the deadline for providing FMLA certification and was told that management employees must answer calls while on

22

FMLA leave.  The district court found these claims beyond the scope of the Complaint and concluded alternatively that this evidence did not show interference with her right to medical leave. We find no error.  An FMLA plaintiff cannot raise a new claim at trial.  *See generally White,* 789 F.3d at 1199-1200 (precluding a plaintiff from asserting a new claim or theory of liability at the summary judgment stage without amending the complaint where the complaint did not give the employer notice of the claim).  Franks's Complaint did not articulate a claim of interference for having been misinformed about FMLA certification requirements or her FMLA rights, and thus the district court correctly rejected the claim.  In any event, even considering these facts, they do not amount to FMLA interference. The record shows that Franks was given additional time to provide her required medical certification, her entire leave request was approved retroactively to the first day she was on medical leave, and there was no evidence that any misinformation resulted in Franks being required to perform work during her FMLA leave.

### III.  CONCLUSION

We reverse and remand for trial on the FMLA interference and retaliation claims based on Franks's termination, consistent with this opinion.  In all other respects, we affirm.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART**.